UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

TOMMY LEE WILLIAMS,
Petitioner,
v.
MORALES, Warden,
Respondent.

Case No. 24-cv-00650-RSH-MMP

**REPORT AND RECOMMENDATION FOR ORDER DISMISSING PETITION WITH PREJUDICE**

This Report and Recommendation is submitted to the Honorable Robert S. Huie, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rules 72.1.d and HC.2.

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 2254, Petitioner Tommy Lee Williams ("Petitioner") filed a Petition for Writ of Habeas Corpus challenging his conviction and sentence entered August 10, 2023. ECF No. 1. Petitioner also filed motions to proceed in forma pauperis and to appoint counsel. ECF Nos. 2, 3.

On April 24, 2024, the Court ruled on Petitioner's petition and related motions. ECF No. 5. First, the Court granted Petitioner's application to proceed in forma pauperis. *Id.* at 1–2. Second, the Court dismissed the petition without prejudice and with leave to amend

for failure to meet the pleading standard set forth in Rule 2(c) under the Rules Governing § 2254 cases. *Id.* at 2–3. The Court detailed: "to satisfy Rule 2(c) the supporting facts must be stated *in the petition* with sufficient detail to enable the Court to determine, from the face of the petition, whether further habeas corpus review is warranted." *Id.* at 2. Third, the Court notified Petitioner his petition contained both exhausted and unexhausted claims and was therefore subject to dismissal. *Id.* at 3. Fourth, the Court denied Petitioner's Motion for Appointment of Counsel without prejudice as moot.[1] *Id.*

On May 20, 2024, Petitioner, now proceeding pro se and in forma pauperis, filed an Amended Petition (the "Petition"). ECF No. 7. On July 24, 2024, Respondent filed an Answer and lodged portions of the state court record. ECF Nos. 13, 14. On August 7, 2024 and August 26, 2024, Petitioner filed an "Opposition"[2] to Respondent's Answer. ECF Nos. 17, 18, 19.[3]

For the reasons discussed herein, the Court **RECOMMENDS** the District Judge **DISMISS** the Petition with prejudice and **RECOMMENDS** a Certificate of Appealability not be issued.

## II. BACKGROUND AND TRIAL PROCEEDINGS

### A. December 2009 Judgment and Subsequent Amendment

The following facts are taken from the California Court of Appeal's opinion in *People v. Tommy Lee Williams*, Appeal No. D056539. ECF No. 14-16 at 2. This Court

---

[1] On August 19, 2025, Petitioner filed an additional Motion for Appointment of Counsel. ECF No. 26. The Court denied Petitioner's motion due to his "failure to demonstrate exceptional circumstances and the uncertain utility of counsel[,]" concluding it was "not in the interests of justice to appoint Petitioner counsel." ECF No. 27 at 3.

[2] Petitioner labels the Traverse "Opposition." ECF Nos. 17 at 1; 18 at 1; 19 at 1.

[3] Additionally, as of the date of this Report and Recommendation, Petitioner has filed numerous ex parte letters to the Court. ECF Nos. 10, 12, 20–25, 28–34, 36, 37. The issues he raised not otherwise disposed of in this Report and Recommendation include a request for monetary relief, comments on the evidence, an explanation of prison related issues, an explanation of health issues, and a request for case updates and documents.

presumes the State court's factual determinations are correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Davis v. Ayala*, 576 U.S. 257, 271 (2015) (quoting *Rice v. Collins*, 546 U.S. 333, 338–39 (2006)). The Court explained:

> The victim [Williams' ex wife] left her apartment and, when she returned in the afternoon, she saw Williams in the parking lot walking quickly toward her. The victim hurried into her apartment and locked the door. Williams knocked on the door and asked to come in. The victim told him to leave. Instead of doing so, he dove headfirst through her bedroom window, breaking it. She ran out of the apartment screaming for help. He ran after her, picked her up by the waist, and took her back into the apartment. Once they were inside, he dropped her on the floor.
>
> After locking the front door, he dragged her by her hair into the master bathroom, where he pulled her up and slammed her head into the faucet, the medicine cabinet, and the wall. He called her a "f------ b----" and told her she "made him do this." He then dragged her by her hair into the dining room where he pinned her to the ground and repeatedly punched her in the face. He told her "it was going to be [her] day to die because [she] wouldn't be alive that night because he was going to kill [her]."
>
> Williams dragged her into the kitchen, where he straddled her and continued punching her. He told her he was going to kill her and then kill himself. He rummaged through a kitchen drawer and grabbed a barbecue fork. He pressed the fork under her chin, puncturing her neck. She grabbed the fork to pull it away from her neck and he started punching her again. He picked up a plate of cat food, smeared the food on her face, and then dropped the plate on the floor. She picked up the plate and slammed it against the floor to break off a piece to use to cut him. He laughed at her effort and told her, "I've taken three handfuls of Creatine before I came over here and I'm stronger, and there's nothing you can do."
>
> Williams turned the victim over onto her stomach and straddled her. He placed the prongs of the barbecue fork against her neck. He talked about paralysis and told her he was trying to locate her spinal cord. He then hooked his fingers in her nostrils and pulled her head and legs to bend her backward into a U shape. She told Williams she was having trouble breathing and he told her she was not supposed to breathe. He further constricted her breathing by covering her mouth with his hand and pinching her nose closed.

In addition, Williams put his hands on both side[s] of the victim's face and tried to push her nose into her face. He did the same thing to her eyes, trying to push them into the back of her head. He also put his fingers inside her mouth and started pulling her mouth apart, saying "he wanted to rip [her] face in half so nobody else would ever want [her]."

During the attack, Williams pulled the victim's pants down while unbuckling his own belt. He touched her labia with his finger and indicated he wanted to have sex with her "just one more time." The victim struggled against Williams. He eventually abandoned his effort, saying "F--- it, you ain't worth it."

At some point, the manager of the victim's apartment complex ran to the victim's apartment, pounded on the door, and demanded entry. The victim screamed for help and told the apartment manager to break a window to get inside.

The apartment manager, her husband, and a neighbor entered the victim's apartment through the window Williams broke. They found the victim lying on the floor of the dining room in a fetal position. Williams was nearby holding the barbecue fork. Williams waved the fork and said, "Back off. Leave us alone."

The victim temporarily lost consciousness. When she awoke, Williams was no longer on top of her. He was pacing back and forth in the dining room. The front door was now open and she used her elbows to scoot toward it. When she was partly outside the door, the apartment manager and her husband grabbed the victim's arms and tried to pull her out of the apartment. Williams grabbed her ankles and pulled her back inside. She kicked him in the stomach and started crawling back outside again with help from the apartment manager, her husband, and another neighbor. Williams then jumped on top of the victim and straddled her waist. He put his watch on her wrist and told her he never wanted her to forget the date and time. When the apartment manager, her husband and the neighbor finally got the victim outside, she was covered in blood, her bra was pulled up exposing her breasts, and her pants and underwear were pulled down to her knees.

Williams's demeanor changed once they were outside the apartment. He brushed the victim's hair away from her face and whispered that he loved her. He told witnesses, "She's trying to kill herself. Help her."

ECF No. 14-16 at 5–7.[4]

On April 29, 2009, a state court jury found Petitioner guilty of attempted murder, torture, corporal injury, false imprisonment, criminal threats, and violating a protective order. ECF No. 14-1 at 254–59. In connection with the attempted murder, corporal injury, false imprisonment, and criminal threat offenses, the jury also found Petitioner personally inflicted great bodily injury and used a deadly and dangerous weapon.[5] *Id.* at 254, 256–58. On December 18, 2009, the state court sentenced Petitioner to life in prison (with the possibility of parole), plus a 15-year prison sentence to run concurrently (the "December 2009 Judgment"). ECF No. 14-2 at 79–82. The state court remanded Petitioner to the custody of the sheriff to serve his sentence. *Id.* at 82.

On August 9, 2011, the California Court of Appeal, Fourth Appellate District, Division One, affirmed the December 2009 Judgment in full. ECF No. 14-16. On October 19, 2011, the California Supreme Court denied Petitioner's petition for review. ECF No. 14-18.

In July 2023, Petitioner filed in state court a Petition for Resentencing Based on Health Conditions Due to Military Service ("Resentencing Petition") pursuant to California Penal Code section 1170.91(b). ECF No. 14-30 at 2–11, 104. Petitioner sought recall of the December 2009 Judgment and requested resentencing based on qualifying mental health disorders. *Id.*

The Resentencing Petition was partially successful. On August 10, 2023, the state trial court modified Petitioner's sentence—reducing his sentence for attempted murder from fifteen (15) years to twelve (12) years—and amended the December 2009 Judgment accordingly (the "August 2023 Judgment"). ECF No. 14-31 at 2. The state trial court remanded Petitioner into the Sheriff's custody. *Id.*

---

[4] All citations to the pleadings and record are to the page number as it appears on the Case Management and Electronic Case Filing ("CM/ECF") system.

[5] The "deadly weapon" was a two-pronged carving fork. *Id.*

**B. Prior Habeas Petitions**

Petitioner challenged the December 2009 Judgment in both state and federal court.[6] Petitioner's prior state habeas petitions have all been adjudicated and denied on various grounds. The Court describes claims raised in each petition to provide a complete record regarding claim exhaustion. Chronologically, Petitioner's previous state court habeas petitions are as follows:[7]

1. Filed in San Diego County Superior Court on February 4, 2021, Case No. HCN1697, with claims of judicial and police misconduct, racism, made-up crime scene photographs, lying witnesses; denied on February 10, 2021. ECF Nos. 14-19, at 4; 14-20.

2. Filed in San Diego County Superior Court on August 26, 2021, Case No. HCN1724, claiming improper medical care and tampering with legal mail at George Bailey Detention Facility; denied on October 12, 2021. ECF No. 14-29.

3. Filed in California Supreme Court on November 22, 2021, Case No. S271910, claiming judicial and police misconduct, racism, made-up crime scene photographs, lying witnesses, and a civil rights violation; denied on March 30, 2022. ECF Nos. 14-21 at 4; 14-22.

4. Filed in California Supreme Court on January 10, 2022, Case No. S272638, claiming improper medical care, unsafe conditions, and legal mail tampering at George Bailey Detention Facility; denied on March 30, 2022. ECF Nos. 14-23 at 4–20; 14-24.

5. Filed in San Diego County Superior Court on October 14, 2022, Case No. HC25940, claiming false evidence and ineffective assistance of counsel ("IAC"); denied on December 2, 2022. ECF No. 14-25 at 24–27.

---

[6] Petitioner's prior federal habeas corpus petitions failed before reaching the merits stage. Therefore, they are not relevant to the Court's analysis on this Petition. For completeness of the record, the prior federal cases are No. 21-cv-01167-CAB-WVG, No. 22-cv-00524-GPC-NLS, and No. 23-cv-00423-TWR-VET.

[7] Unless otherwise indicated, the Court refers to the date the pleading was entered in the court's docket.

6. Filed in California Court of Appeal, Fourth Appellate District, Division One, on February 9, 2023, Case No. D081576, claiming judicial and police misconduct, lying witnesses, made-up crime scene photographs, and IAC; denied February 17, 2023. ECF Nos. 14-25 at 2–23; 14-26 at 3–4.

7. Filed in San Diego County Superior Court on March 22, 2023, Case No. HCN1724, claiming judicial and police misconduct, racism by all parties involved in his conviction, fabricated evidence, and IAC; denied on June 23, 2023. ECF No. 14-28 at 2–4.[8]

8. Filed in San Diego County Superior Court on January 22, 2024, Case No. HCN1724, claiming lying witnesses, false evidence, prosecutorial misconduct, and requesting discovery pursuant to Penal Code section 745; denied on March 22, 2024. ECF Nos. 14-27 at 2, 4–5, 7–9; 14-32 at 2–7. The Court denied the discovery request for lack of jurisdiction to consider the post-judgment motions. ECF No. 14-32 at 5.

**C. The Petition, Respondent's Answer, and Petitioner's Traverse**

On April 5, 2024, Petitioner filed for federal habeas relief by attacking the August 2023 Judgment. ECF Nos. 1; 7 at 1. Petitioner asserts four grounds for relief: (1) prosecutorial misconduct, (2) police misconduct, (3) IAC, and (4) lying witnesses. ECF No. 7 at 6–9.

On July 1, 2024, Petitioner filed a Motion for Discovery. ECF No. 11. Petitioner requested the Court "get all the evidence at the Escondido Police Dept." ECF Nos. 11; 16 at 1. On August 2, 2024, the Court denied Petitioner's Motion without prejudice because Petitioner failed to address which specific discovery he sought, nor did he address or establish good cause to grant leave for discovery. ECF No. 16 at 2.

---

[8] The Court also noted "these claims are substantially similar, if not identical, to those raised in Petitioner's Petition for Writ of Habeas Corpus filed with the 4th Appellate District Court of California on February 9, 2023." Id. at 3.

On July 24, 2024, Respondent filed an Answer opposing the Petition. ECF No. 13. Respondent makes three primary arguments.

First, regarding the claims of prosecutorial misconduct, police misconduct, and lying witnesses, Respondent argues there is no legal or factual case for relief because Petitioner does not plead "denial of a federal or constitutional right," nor are the allegations pled with particularity or supported by evidence. ECF No. 13-1 at 8–9. Second, Respondent argues Petitioner's IAC claim fails to establish deficient performance and prejudice under the *Strickland v. Washington* standard. 466 U.S. 668, 687 (1984). *Id.* at 9. Third, Respondent argues two of Petitioner's claims were not presented to the California Supreme Court, implicating the "exhaustion requirement of 28 U.S.C. § 2254(b) and the procedural-default rule." *Id.* at 10.

In reply, Petitioner reiterates arguments regarding prosecutorial and police misconduct[9] and requests an evidentiary hearing for the Court to review "made[] up" evidence.[10] ECF Nos. 17 at 4; 19 at 1–2.

## III. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). *See also Bowe v. United States*, 607 U.S. 13, 17 (2026) ("A state prisoner can file

---

[9] Petitioner argues evidence, including crime scene photos, is fake. The Court liberally construes this as supporting reasoning for Petitioner's opening claims of prosecutorial and police misconduct. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed.") (citation modified).

[10] The evidentiary hearing request does not appear in the Petition, and the Court does not consider it in this Report and Recommendation. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation modified). Even if the Court did consider the evidentiary hearing request, it would be denied as the record refutes Petitioner's allegations and precludes habeas relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). *See* Section IV(A).

an application for a writ of habeas corpus under 28 U.S.C. § 2254.") Under 28 U.S.C. § 2254(d), a federal habeas petitioner cannot obtain federal habeas relief on a claim the state court adjudicated on the merits unless the petitioner is first able to show the state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Richter*, 562 U.S. at 97–98 (quoting 28 U.S.C. § 2254(d)(1)-(2)).

A decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *Bruce v. Terhune*, 376 F.3d 950, 953 (9th Cir. 2004).

With respect to § 2254(d), "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473. "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Rice v. Collins*, 546 U.S. 333, 338–39 (2006) (quoting 28 U.S.C. § 2254(e)(1)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). *Richter* describes the high bar of the habeas standard:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on

> federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents.

*Richter*, 562 U.S. at 102. (citation modified).

Additionally, even in a situation where § 2254(d) is satisfied or does not apply, a reviewing federal court must still determine whether the petitioner has established a federal constitutional violation. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007) (§ 2254(d) "sets forth a precondition to the grant of habeas relief . . . not an entitlement to it."); *see also Frantz v. Hazey*, 533 F.3d 724, 735–36 (9th Cir. 2008) (en banc). By statute, federal courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In a federal habeas action, "[t]he petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam)). Even so, "prisoner pro se pleadings are given the benefit of liberal construction." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010) (citation modified).

## IV. ANALYSIS

### A. Petitioner Fails to State a Cognizable Claim on Claims (1), (2), and (4)

Petitioner fails to state a cognizable federal habeas claim under 28 U.S.C. § 2254(a) for prosecutorial misconduct, police misconduct, and lying witnesses. Section 2254(a) sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.

Regarding prosecutorial misconduct, police misconduct, and lying witnesses, Petitioner does not allege he is in custody in "violation of the Constitution or laws or treaties of the United States." *See id.* Petitioner's prosecutorial and police misconduct

claims and lying witnesses claims are not raised as due process claims before this Court or the state courts.

1. No Due Process Claim

First, Petitioner argues the "made[] up" crime scene photographs violate his Fourteenth Amendment Constitutional rights and are related to racist prosecutorial misconduct. ECF No. 7 at 6. However, this does not meet the hurdle of 28 U.S.C. § 2254(a); he does not explain how or why the photographs are made up, provide evidence of racism by the prosecution, nor what the actual violation is.

Petitioner provides crime scene and victim injury photographs from the state court trial. ECF No. 11 at 3–17. However, he does not provide evidence of photograph fabrication nor explain how the photographs support the crime scene was "made[] up." As Respondent states, the photographs "seem consistent with the trial testimony and evidence[,]" but if they were themselves part of a fabricated crime scene, they could not independently prove any fabrication. ECF No. 13-1 at 9–10. The Court agrees; the photographs Petitioner provides do not support his claims.

Second, Petitioner similarly argues the police misconduct is due to racism and a "fake" crime scene. ECF No. 7 at 7. Again, this is not a due process claim because Petitioner fails to provide any support of the threadbare allegations nor what the constitutional or federal violation under Section 2254(a) is.

Third, Petitioner does not describe the lying witnesses claim as a due process violation, only supporting the claim with: "I never stab, drag, torture [victim] or beat her. We never left the apartment and never spoke or seen any witnesses everyone lied. [Victim] lied about the [domestic violence] case against me. She tried to have me killed while I was in [the] Sheriff['s] custody. Everything was recorded." *Id.* at 9. The Court finds Petitioner fails to raise the prosecutorial misconduct, police misconduct, and lying witnesses claims as due process violations in his Petition.

//

//

2. <u>Exhaustion</u>

Even if the Court liberally construes these claims as alleging a denial of due process, Petitioner is required to identify the federal claim when exhausting it before the state courts. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A petitioner may indicate a federal claim by citing a "federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin*, 541 U.S. at 32.

Looking to Petitioner's California Supreme Court habeas petitions, he never makes a federal claim on these issues. ECF Nos. 14-21 at 4–7 ("Civil Rights Violated. Escondido Police and DA [] made[]-up a fake bloody crime scene[,] fake injuries on the victim . . . used photo shop."); 14-23 at 4–20 (Claims regarding improper medical care, unsafe conditions, and tampering with Petitioner's legal mail, none of which are at issue in the instant petition). Petitioner's at-issue claims are not explicitly, nor implicitly, federal.

Looking to Petitioner's California Court of Appeal, Fourth Appellate Division, Petitioner alleged "[p]rosecutorial misconduct by [District Attorney] [and] racist misconduct by Escondido Police and [victim] and witnesses[.]" ECF No. 14-25 at 4. The Court found Petitioner's claims "unsupported" and "[w]ithout any evidentiary support." ECF No. 14-26 at 4. The California Court of Appeal did not analyze or consider the claims under a due process framework nor did Petitioner provide them with a basis to do so.

Therefore, Petitioner fails to state a cognizable claim on the police misconduct, prosecutorial misconduct, and lying witnesses claims because he does not allege he is in custody in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Even if his allegations met the hurdle of 28 U.S.C. § 2254(a), the claims would be unexhausted because he failed to alert the California Supreme Court to the federal nature

of the claims.

3. Conclusion

In sum, the Court finds Petitioner's prosecutorial misconduct, police misconduct, and lying witnesses claims are not cognizable federal habeas corpus claims under 28 U.S.C. § 2254(a). They are not raised as due process claims, nor were they raised as due process claims in front of the California Court of Appeal nor California Supreme Court. Therefore, Petitioner is not entitled to habeas relief on these claims. The Court **RECOMMENDS** the District Judge deny the Petition as to claims 1, 2, and 4 for failure to state a claim. Even if Petitioner did succeed on stating a claim on 1, 2, and 4, the claims fail as unexhausted because they were not raised as federal claims in front of the state courts.

**B. Petitioner Is Not Entitled to Relief on Claim (3)**

First, Petitioner did not assert an IAC claim in either of his state habeas petitions to the California Supreme Court. Second, his IAC claim is procedurally defaulted, barring the claim here. Third, even if his IAC claim is not procedurally defaulted, it fails on the merits.

1. Exhaustion and Procedural Default

The Court must determine whether Petitioner's IAC claim is exhausted and/or procedurally barred from federal review. Respondent highlights the procedural-default rule in his Answer, arguing "any claim that [Petitioner] has not already raised in the California Supreme Court is procedurally defaulted due to the absence of a state-court remedy." ECF No. 13-1 at 11.

Petitioner raised an IAC claim in the San Diego County Superior Court and the California Court of Appeal, Fourth Appellate District, Division One. ECF Nos. 14-25 at 2, 18, 24–27; 14-26. Both Courts denied the IAC claim. ECF Nos. 14-25 at 26–27; 14-26 at 3–4. Petitioner asserts he presented the IAC claim to the California Supreme Court in cases S271910 and S272638. ECF No. 7 at 8. However, neither of Petitioner's habeas petitions to the California Supreme Court allege an IAC claim. *See* ECF Nos. 14-21; 14-23. In Petitioner's S271910 Supreme Court Petition, his supporting facts include his attorney failing to send him discovery regarding crime scene photographs. ECF No. 14-21 at 4.

However, this is in support of the prosecutorial and police misconduct claim, rather than an IAC claim. Even liberally construing the grounds for relief, the Court does not find Petitioner raised an IAC claim where his grounds for relief did not mention his attorney nor his attorney's conduct. *Id.*

Typically, a petitioner satisfies the exhaustion requirement by raising his federal claim before the highest state court. *O'Sullivan*, 526 U.S. at 848. This did not happen here.

However, when a petitioner fails to exhaust state judicial remedies by raising the claim in the highest state court, the claim may nonetheless become "technically exhausted" if and/or when state-court remedies are no longer available. *Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006). In such instances, a federal habeas court must apply "an important corollary to the exhaustion requirement: the doctrine of procedural default." *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (citation modified). Under the procedural default doctrine, federal courts generally decline to hear any federal claim which would be denied by the state courts under a procedural rule that is independent and adequate. *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000). *See also Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).

Petitioner's IAC claim is technically exhausted and procedurally defaulted. The California Supreme Court denied both of Petitioner's petitions on March 30, 2022. ECF Nos. 14-22; 14-24. Petitioner made an IAC claim to the California Court of Appeal in February 2023, fourteen years after his January 2009 Judgment became final. ECF No. 14-26 at 3. Petitioner had no adequate explanation for the delay, and the California Court of Appeal found the IAC claim barred as untimely. *Id.* As the Court of Appeal found the IAC claim untimely, it is reasonable the California Supreme Court would find the same.

California law does not have an affixed statutory filing deadline for petitions for habeas corpus. *Walker v. Martin*, 562 U.S. 307, 310 (2011). Instead, courts "apply a general reasonableness standard." *Carey v. Saffold*, 536 U.S. 214, 222 (2002) (citation modified). "Petitioners in noncapital cases must establish (1) the absence of 'substantial delay,' (2) good cause for the delay, or (3) that the claim falls within an exception to untimeliness bar." *Jones v. Cate*, 09-cv-1896-JM-DHB, 2016 WL 11889148, at *4 (S.D.

Cal. Sept. 20, 2016) (citing *In re Robbins*, 18 Cal. 4th 770, 780 (1998)). "Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim." *Robbins*, 18 Cal. 4th at 780. Therefore, the relevant question is whether Petitioner's IAC claim is "substantial[ly] delay[ed]" if Petitioner were to bring the IAC claim before the California Supreme Court now.

Here, if Petitioner were to return to state court, he would be seeking relief seventeen years after his January 2009 Judgment. The California Supreme Court would almost certainly find this constitutes substantial delay. *See Walker*, 562 U.S. at 317 (noting it was "altogether plain that [Petitioner's] delay of nearly five years ranked as 'substantial.'")[11] As Petitioner cannot overcome the substantial delay factor and does not present any argument for good cause for the delay—instead representing he has exhausted his IAC claim before the California Supreme Court—his claim is procedurally defaulted, and there is no reason to excuse such default.

Therefore, Petitioner's IAC claim fails for two reasons: (1) Petitioner did not exhaust the IAC claim before the California Supreme Court and (2) the California Court of Appeal found Petitioner's IAC claim was untimely, and the California Supreme Court would almost certainly find Petitioner procedurally barred from presenting the IAC claim due to untimeliness.

Additionally, Petitioner could not bring an IAC claim to the California Supreme Court now because it is successive to his prior two petitions. There is no alleged justification for Petitioner not bringing the IAC claim in either California Supreme Court Petition. Absent a justification for failure to bring all claims in a single writ of habeas

---

[11] The Supreme Court referenced the following cases to show substantial delay that barred claims: *In re Gallego*, 18 Cal. 4th 825, 829-31, 838, and n.13 (1998) (delay of four years barred claim); *In re Tsaturyan*, No. B156012, 2002 WL 1614107, at *3 (Cal. App. 2002) (delay of 16 months barred claim); *In re Miller*, No. B186447, 2006 WL 1980385, at *2–3 (Cal. App. 2006) (delay of two years and six months barred claim).

corpus, "successive and/or untimely petitions will be summarily denied. The only exception to this rule are petitions which allege facts which, if proven, would establish that a *fundamental* miscarriage of justice occurred as a result of the proceedings leading to conviction and/or sentence." *In re Clark*, 5 Cal. 4th 750, 797 (1993) (emphasis in original) (superseded by statute on other grounds). As Petitioner failed to bring the IAC claim in his two California Supreme Court habeas petitions, it would be summarily denied as successive.

The next question before the Court is if it can review Petitioner's claim despite the procedural default. Federal review of a procedurally defaulted claim is ordinarily barred unless a petitioner can show cause and prejudice or the federal habeas court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).

This Court does not need to determine if the exception applies here because the claim fails on the merits under a de novo review, for the reasons discussed below. *See Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same."); *see also Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be."), *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in de novo review . . . a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review, *see* § 2254(a).") (citation modified). Therefore, the Court next turns to the merits of Petitioner's IAC claim.

2. <u>Merits</u>

Even if Petitioner's claim is not procedurally defaulted, it fails on the merits. Petitioner argues his trial counsel "should have known" what prosecutors and witnesses "did" regarding making up crime scene photographs. ECF No. 7 at 8. He states he asked

counsel for the photographs multiple times and ultimately asked the California State Bar to require his attorney give him the photographs. *Id.* Finally, he argues his trial counsel failed to provide the photographs to Petitioner's appellate attorney. *Id.* The Court does not find any of his IAC arguments meritorious.

To prevail on an IAC claim, Petitioner must establish deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). First, to establish IAC, a petitioner must show their attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Petitioner must show counsel's performance was deficient. *Id.* at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689.

Petitioner must also establish counsel's alleged deficiency caused him prejudice. The prejudice prong can be demonstrated by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A federal habeas court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Strickland*, 466 U.S. at 697.

Respondent contends Petitioner fails to demonstrate either *Strickland* prong. ECF No. 13-1 at 9. The Court agrees. He fails to establish both deficient performance and prejudice. Petitioner does not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

//

//

a. Petitioner Fails to Demonstrate Deficient Performance

First, Petitioner fails to demonstrate deficient performance. As Respondent correctly asserts, Petitioner fails to explain why or how his counsel should have known police purportedly fabricated photographic evidence. ECF No. 13-1 at 9. He hangs his hat on his self-serving allegations of the "made up" photographs and counsel's purported failure in relation to the photographs. Yet he does not provide support for how his counsel should have known the photographs were "made up." In addition, he provides no evidence supporting his claim numerous eyewitnesses manufactured their testimony and lied in support of the "made up" crime scene photographs. Thus, he cannot overcome the strong presumption counsel's conduct fell within the range of reasonable professional assistance. Because he fails to demonstrate the photographic evidence was fabricated, he cannot show counsel's performance was deficient by not providing him photographs during discovery.

Additionally, there is no deficient performance from an alleged failure of trial counsel to provide appellate counsel with crime scene photographs. ECF No. 7 at 8. The record reflects appellate counsel had access to the allegedly "made up" crime scene photographs. The photographs were admitted as evidence during trial. ECF No. 14-2 at 3–6. Appellate counsel had access to the trial record, citing it in her appellate brief. ECF No. 14-13 at 2–26. Therefore, Petitioner does not demonstrate trial counsel's performance was deficient where appellate counsel had access to the trial court record and specifically, the at-issue photographs.

b. Petitioner Fails to Demonstrate Prejudice

Second, Petitioner fails to demonstrate prejudice. There was substantial evidence supporting the crime scene photographs, including over five eyewitnesses' testimony describing the crime scene and a trauma surgeon's testimony regarding Petitioner's ex-wife's injuries. ECF Nos. 14-8 at 62, 71–72, 101–09, 114–17, 143–44, 210–12; 14-9 at 124–67. The injuries included: dislocated jaw, orbital fracture, a puncture wound on her neck, and cuts on both hands. ECF No. 14-9 at 131–142. Petitioner fails to demonstrate how he was prejudiced by not receiving photographs in discovery nor how it would impact

the outcome of the case.

Moreover, the trial judge made explicit findings regarding counsel's performance in the trial notwithstanding the overwhelming evidence against Petitioner:

> The evidence was in all respects overwhelming. I think it's nothing short of astounding that [trial attorney] was able to keep the jury out in deliberations as long as he did. The injuries to this woman was nothing short of shocking. The number of eyewitnesses seeing Mr. Williams at the scene dragging this poor victim around that house was overwhelming.

ECF No. 14-10 at 159–60.

Based on the record before the Court, the Court finds Petitioner cannot show prejudice from a failure of counsel related to fabricated crime scene photographs when there was additional evidence supporting the photographic evidence and victim's injuries. Nor does Petitioner provide evidence supporting his claim eyewitnesses manufactured their testimony and lied in support of the "made-up" crime scene photographs. Petitioner fails to explain how providing him the allegedly "made-up" photographs would have altered trial strategy or the result. Petitioner does not demonstrate but for counsel's deficiencies in failing to provide him crime scene photographs in discovery, the case outcome would have been different. *Strickland*, 466 U.S. at 694.

Nor does Petitioner demonstrate prejudice because he cannot show his appeal would have been successful had trial counsel provided the records to appellate counsel when appellate counsel had access through the trial record itself. Finally, trial counsel not providing photographs to appellate counsel could not have prejudiced Petitioner at trial because the alleged conduct occurred following the trial.

3. Conclusion

In sum, the Court finds Petitioner's IAC claim is technically exhausted and procedurally defaulted. *Ngo*, 548 U.S. at 92-93; *Walker*, 562 U.S. at 312. In addition, having reviewed the merits of the claim de novo, the Court finds Petitioner does not establish prejudice and deficient performance to warrant relief. Therefore, Petitioner is not entitled to habeas relief on this claim. The Court **RECOMMENDS** the District Judge

**DENY** the Petition as to the IAC claim.

## V. CERTIFICATE OF APPEALABILITY

A petitioner may not appeal "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" except when "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). When the district court "enters a final order adverse to the applicant," it must also issue or deny a certificate of appealability ("COA"). R. 11(a), Rules Governing Section 2254 Cases (2019).

A COA should issue if the "applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 580 U.S. 100, 115 (2017) (citation modified). This standard applies to the district court's rejection of claims on the merits as well as on procedural grounds. *See id.* at 122 ("[A] litigant seeking a COA must demonstrate that a procedural ruling barring relief is itself debatable among jurists of reason; otherwise, the appeal would not 'deserve encouragement to proceed further.'") (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Habeas petitioners must make "a substantial showing of the denial of a constitutional right" to receive a COA. 28 U.S.C. § 2253(c)(2).

For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court **RECOMMENDS** a Certificate of Appealability not be issued.

## VI. CONCLUSION AND RECOMMENDATION

For the reasons discussed herein, **IT IS HEREBY RECOMMENDED** the District Judge issue an Order: (1) **APPROVING** and **ADOPTING** this Report and Recommendation, (2) **DENYING** Petitioner's Petition for Writ of Habeas Corpus, and (3) **DECLINING** to issue a Certificate of Appealability.

Within fourteen (14) days from the date of service of these filings and recommendations, any party may file written objections with the Court. Such a document

should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after the objections are filed. The parties are advised failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

**IT IS SO ORDERED**.

Dated: October 2, 2026

HON. MICHELLE M. PETTIT
United States Magistrate Judge